IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIDA DEJESUS, administrator of the | : | CIVIL ACTION |
| Estate of Ubaldo N. Ramos | : | |
| v. | : | |
| | : | |
| CITY OF LANCASTER, et al. | : | NO. 14-CV-3437 |

**MEMORANDUM AND ORDER**

Ditter, J.                                                                                           November 7, 2016

Decedent's administratrix brought this action contending he died from an injury suffered when named police officers not only failed to protect him from harm but put him in danger while he was in their custody. Before me is a joint motion for summary judgment filed by the officers and the municipality that employed them. I will grant the motion.

1. Factual Background[1]

On August 31, 2012, Officer Henry C. Barrie and Sergeant Gary McCrady while on patrol in the City of Lancaster observed Ubaldo N. Ramos, an elderly man, acting in a manner that indicated he was severely intoxicated. Believing Mr. Ramos was so intoxicated that he was a risk to his own safety and the safety of others, the officers arrested Mr. Ramos for public drunkenness. He was transported by Officer Barrie to the

---

[1] I have taken the facts largely from an internal video that recorded the events that took place when Mr. Ramos arrived at the Lancaster police station. Trial courts can make factual findings based on what is shown by a video tape. *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007). To a very limited degree, I have also used Officer Barrie's deposition and I have considered the ideas and opinions of Plaintiff's expert.

Lancaster police station for processing.  Prior to being placed in the patrol car, Mr. Ramos' hands were handcuffed behind his back.

At the police station, Officer Barrie helped Mr. Ramos from the car and kept his hands on Mr. Ramos as he walked to the slating desk and stood there.  Officer Barrie went to get a pair of gloves, returned, left to throw the gloves away, and upon returning, removed the handcuffs.  Officer Barrie told Mr. Ramos to empty his pockets, place the contents on the slating desk, and put his hands on it to steady himself.  Concerned because of Mr. Ramos' age, intoxication, and balance, Officer Barrie got a chair and pushed it behind Mr. Ramos.  Contrary to plaintiff's assertion, this did not cause Mr. Ramos to fall.  The video plainly shows that Mr. Ramos is standing and the chair is directly behind him.

Officer Barrie told him to sit down but Mr. Ramos missed the chair and fell to the floor striking his head.  Officer Barrie immediately called for emergency medical services and tried to keep Mr. Ramos' airway open.  Mr. Ramos was treated by the trauma unit at Lancaster General Hospital and later transferred to a nursing home facility for medical care and treatment.  Mr. Ramos died on July 3, 2013, from the injury sustained at the police station.

2. Standard of Review

The standard of review for a motion for summary judgment is well established.  I must consider the evidence in a light most favorable to the non-moving party.  If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  An issue is genuine only if the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

3.  Discussion

Plaintiff has asserted five counts under 42 U.S.C. § 1983.  To state a § 1983 claim, the plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States.  *Nincini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000)(en banc).  The first step in evaluating such a claim requires the identification of an underlying right that is alleged to have been violated and then the determination whether the alleged deprivation is of that constitutional right.  *Id.*

Defendants have moved for summary judgment on all five counts of the amended complaint.  I shall discuss each separately.

**A.  Count I - Violation of Civil Rights, 42 U.S.C. § 1983 (special relationship)**

The Due Process Clause forbids the State itself from depriving "individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means."  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

However, when the State takes a person into its custody and holds him there against his will, a special relationship is created and with it a duty of due care for his safety and general well-being.  The lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person.  *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

3

To hold that injury caused by the conduct of a reasonable person is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principal of due process law. *Id*. Thus, where a government official's act causing injury to life, liberty, or property is merely negligent, no compensation is required. *Id. (citing Parratt v Taylor*, 451 U.S. 527, 548 (1981)).

In Count I, Plaintiff asserts a violation of substantive due process under the Fourteenth Amendment. She contends a special relationship was created with Mr. Ramos when the defendants took him into police custody, they owed him a duty to ensure his safety and well-being, and this duty was breached when Mr. Ramos was left unattended despite his severe intoxication.

Mr. Ramos was in police custody so without question a special relationship existed requiring due care. It is equally clear that Officer Barrie provided due care. He held Mr. Ramos as he walked to the slating desk, removed the handcuffs, told Mr. Ramos to use the slating desk to steady himself, and brought a chair so Mr. Ramos could sit down. All this is consistent with due care. While it is true that he left Mr. Ramos unattended when he went for gloves and when he discarded the gloves, nothing happened – no harm came to Mr. Ramos – that was not when he fell.

In short, there was no deviation from the standard of due care and no harm to Mr. Ramos until he was told to sit down for his own safety and well being. I conclude that no reasonable juror could find to the contrary.

Defendants' motion for summary judgment as to Count I will be granted.

**B. Count II - Violation of Civil Rights, 42 U.S.C. § 1983 (state-created danger)**

There is a second exception to the general rule that Due Process does not require the state to protect persons from harm.  Known as the state-created danger theory it is found when state authority is affirmatively employed in a manner that injures a person or renders him more vulnerable to injury from another source than he would have been in the absence of state intervention.

Case law establishes the following essential elements of a meritorious state created danger claim:

> 1) the harm ultimately caused was foreseeable and fairly direct;
> 2) a state actor acted with a degree of culpability that shocks the conscience;
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions as opposed to a member of the public in general; and
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than has the state not acted at all. *Bright v. Westmoreland Co.*, 443 F.3d 276, 281 (3d Cir. 2006).

Turning to the first essential element, the initial question is whether the harm **ultimately** caused was foreseeable, that is, could Mr. Ramos' death have been reasonably anticipated from his being told to sit down.

Again, Mr. Ramos was standing with a chair immediately behind him.  He may have been drunk, but he had stood without assistance and had complied successfully with all the directions he had received.  He did not misunderstand what he was told to do and he

5

tried to do it. There was nothing to suggest that he could not comply with that simplest of all requests, sit down – nothing to suggest the ultimate harm, death, would result from his being told to do what he undoubtedly did many times during the day whether he had been drinking or not.[2]

Foreseeability is not determined with the wisdom of hindsight but on the basis of the then-known and its effect on the reasonable possibilities of an unknown future. Again, the reasonable possibilities, not the remote or conjured up chances.

I conclude that no reasonable juror could find that Mr. Ramos' death was a foreseeable consequence of his being told to sit down.

In light of my conclusion concerning foreseeability, it is unnecessary to analyze whether Mr. Ramos' death was the fairly direct result of his being told to sit down. To prove a state related danger claim, all its essential elements must be established so there is no need to consider the other essential elements. However, I will discuss the second essential element of a state created danger claim: did Officer Barrie act with a degree of culpability that shocks the conscience? Conscience shocking behavior has been referred to as that which is manifestly and grossly unjust and unfair, it is the most egregious type of behavior.

Telling Mr. Ramos to sit down was not an unjust direction nor one that could be

---

[2] I speculate that Mr. Ramos may have lost his balance because he was turning to see the chair. While that possibility might explain the fall, it does not make the ultimate harm, death, more foreseeable.

considered unfair. It was done for his comfort and care. Officer Barrie was not using his superior position to take advantage of Mr. Ramos but to provide protection. It was not egregious conduct.

The question of conscience shocking culpability depends upon the circumstances. Where an officer is engaged in a high-speed chase and must make a split-second decision, he will be liable only if he intends to harm. On the other hand, where a state actor has to act with some urgency but an instant decision is not required, the question is whether he was deliberately indifferent to the consequences. *Kasucher v. Bucks etc.*, 455 F.3d 418, 426 (3d.Cir. 2006). Conscience shocking behavior cannot be found where it was done for a legitimate purpose, excessive force was not used, and there was no malicious intent. *Gottlieb ex rel. Calabria v. Laurel Highlands School Dist.,* 272 F.3d 168 (3d Cir. 2001).

What shocks the conscience is found when the state actor knows that what he is doing may cause harm but he does it anyway. In other words, he acts with deliberate indifference to the consequences.

Here, in order to prove deliberate indifference, plaintiff must prove that Officer Barrie knew that Mr. Ramos might fall and might suffer a fatal injury when told to sit down but Officer Barrie told him to do it anyway.

Plaintiff has failed to produce any evidence that Officer Barrie was deliberately indifferent to Mr. Ramos well-being. To the contrary, all the evidence shows Officer Barrie's concern for Mr. Ramos' well-being: he was arrested out of concern, he was assisted while walking to the slating desk, he was told to use it to steady himself, and the

chair was obtained out of concern for Mr. Ramos.  After Mr. Ramos fell, Officer Barrie called immediately for medical help and tried to keep Mr. Ramos airway open.  All the evidence rebuts any contention that Officer Barrie was deliberately indifferent.

Plaintiff asserts that Officer Barrie should have continued to hold Mr. Ramos' arm and put him into the chair, or he should have had another officer bring a chair over for Mr. Ramos.  Blessed with the wisdom of hindsight these are reasonable assertions.  However, at most they suggest that Officer Barrie was negligent.  Merely negligent acts cannot support a claim under the state created danger exception.  *Kniepp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996).  A negligent act does not rise to the point of deliberate indifference – to the point of shocking the conscience.

I conclude that no reasonable juror could find that Officer Barrie's direction to sit down shocks the conscience.

Defendants' motion for summary judgment as to Count II will be granted.

**C.  Count III - Violation of Civil Rights, 42 U.S.C. § 1983 (wrongful death) and Count IV - Violation of Civil Rights, 42 U.S.C. § 1983 (survival action)**

These two claims were raised in the original complaint as state law claims and the defendants moved to dismiss them under Pennsylvania's Political Subdivisions Tort Claim Act.  42 Pa.C.S.A. § 8541.  The Act provides a general grant of immunity to political subdivisions, their departments, and employees when acting in the scope of their employment but provides limited exceptions for such recoveries, none of which is applicable here.  42 Pa.C.S.A. § 8542.  In response, the plaintiff filed an amended

complaint asserting these claims as constitutional violations - constitutional violations that caused Mr. Ramos' death.

As I have determined that death was not a foreseeable consequence of Officer Barrie's direction to sit down nor was it conscience shocking, summary judgment for defendants as to the wrongful death and survival claims must also be granted.

### V.  Monel Claims

Plaintiff has also sued the City of Lancaster claiming it is responsible for Mr. Ramos' death.

Plaintiff recognizes that a municipal corporation cannot be held liable for the actions of its employees under the theory of vicarious liability *See Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978).  To establish municipal liability, a plaintiff must establish that harm was the result of a municipality's custom or policy. Plaintiff asserts that Mr. Ramos fell because the city deliberately failed to train or supervise its police officers in the care of intoxicated persons who had been taken into custody.  Plaintiff has provided no evidence that there was a failure to train, much less that the failure to train was deliberate.  Plaintiff's expert doesn't offer anything to establish a custom or policy by the city of Lancaster.

Plaintiff's expert also offers an alternative to the failure to train theory: Officer Barrie was deliberately indifferent.

Take your pick, but there is no evidence of either.

In any event – there was no constitutional violation by Officer Barrie and therefore, no municipal liability. *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986).

I will grant Defendant's motion for summary judgment as to Plaintiff's Monell claim.

**VI. Claims Against Defendants Sadler and McCrady and John Doe Defendants**

Plaintiff does not oppose the dismissal of individual defendants Sadler and McCrady and John Doe Defendants. Therefore, these defendants are dismissed from this action.

An appropriate order follows.